1  DENISE M. MINGRONE (SBN 135224)
   dmingrone@orrick.com
2  ROBERT URIARTE (SBN 258274)
   ruriarte@orrick.com
3  TAMMY SU (SBN 329652)
   tsu@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
5  Menlo Park, CA  94025-1015
   Telephone:   +1 650 614 7400
6  Facsimile:   +1 650 614 7401

7  Attorneys for Plaintiff
   SYNOPSYS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPSYS, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>SUNLUNE CORPORATION, and DOES 1-10, inclusive,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT FOR (1) VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT 17 U.S.C. §§ 1201, ET SEQ.; AND (2) BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

COMPLAINT AND DEMAND
FOR JURY TRIAL

Plaintiff Synopsys, Inc. ("Synopsys") hereby brings this Complaint against Defendant Sunlune Corporation ("Sunlune") for circumventing technological measures that effectively control access to Synopsys software, including at least IC Compiler II, Fusion Compiler, HSPICE, and PrimeLib, in violation of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201, *et seq.* (the "DMCA"). Synopsys seeks injunctive relief, statutory and/or actual damages, attorneys' fees and costs, an accounting, and any such other relief as the Court may deem proper. Synopsys alleges the following based on personal knowledge, unless indicated as on information and belief.

**PARTIES**

1. Plaintiff Synopsys is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Sunnyvale, California.

2. Defendant Sunlune is a corporation organized and existing under the laws of the State of California, with its principal place of business in Santa Clara, California.

3. Plaintiff does not presently know the true names and capacities of the defendants sued herein as Does 1 through 10, inclusive. Synopsys may seek leave of court to amend this Complaint to allege the defendants' true names and capacities once it ascertains this information.

**JURISDICTION AND VENUE**

4. This Court has federal-question subject matter jurisdiction over this action under 28 U.S.C. § 1331 because the federal courts are vested with exclusive jurisdiction in actions arising under the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201, *et seq* and in copyright cases under 28 U.S.C. §1338(a).

5. This Court has personal jurisdiction over Sunlune because its principal place of business lies within the State of California, because it has conducted and does conduct business within the State of California and the Northern District of California, and because Sunlune consented to such jurisdiction in its End-User Software License and Maintenance Agreement with Synopsys.

6. Venue in this district is appropriate under 28 U.S.C. §§ 1391 and 1400 because Sunlune and, on information and belief, the Doe defendants, reside in the State of California and

the Northern District of California, because a substantial part of the events giving rise to the dispute occurred within this district, and because Sunlune consented to such venue in its End-User Software License and Maintenance Agreement with Synopsys.

## FACTUAL ALLEGATIONS

### General Background

7. As modern electronic devices become more and more compact and powerful, they use increasingly sophisticated computer processor chips. When designing a computer processing chip, the stakes are enormous. Chip designers need software that will ensure that their complex designs will work flawlessly. Accordingly, chip designers require extremely robust and powerful computer software to design and test those chips. Many of the world's biggest and most important chip design companies turn to Synopsys for that software.

8. Since it was founded in 1986, Synopsys has been a leading provider of Electronic Design Automation ("EDA") solutions for the semiconductor industry. EDA generally refers to using computers to design, verify, and simulate the performance of electronic circuits. For more than 30 years, Synopsys' solutions have helped semiconductor manufacturers and electronics companies design, test, and manufacture circuit chips and electronic systems for a wide range of products. Headquartered in Sunnyvale, California, Synopsys is the fourteenth largest software company in the world and currently employs over 19,000 employees worldwide. Synopsys has developed a comprehensive, integrated portfolio of prototyping, IP, implementation, verification, manufacturing, optical, field-programmable gate array, and software quality and security solutions.

9. Synopsys' EDA software applications, including the IC Compiler II, Fusion Compiler, HSPICE, and PrimeLib software at issue in this case, are creative and original works of authorship subject to copyright protection under Title 17 of the United States Code.

10. Synopsys has invested hundreds of millions of dollars and enormous amounts of time and effort into the research, development, design, and refinement of the software at issue in this case. Such investment is necessary to maintain Synopsys' place as a leader in the competitive

EDA industry, and to continue to provide leading circuit and chip manufacturers with cutting-edge design technology.

11. Synopsys does not sell its ownership rights, copyrights, or other intellectual property rights to its EDA software. Instead, Synopsys customers purchase licenses. These licenses grant Synopsys customers limited rights to install Synopsys software and to access and use specific Synopsys software programs subject to control by Synopsys' License Key System, which is a built-in security system that controls access to Synopsys software by requiring a user to access a key code provided by Synopsys to execute the licensed software. This key code controls the quantity and term of the licensed software in accordance with the license terms. Synopsys controls access to and use of its license key files through Synopsys' proprietary license server software, which is licensed to customers along with Synopsys' EDA applications. This license server software, too, is a creative work of authorship protected by the Copyright Act.

12. Synopsys' License Key System is a technological measure that controls access to the software. Synopsys' access controls, in the ordinary course of operation, ensure that Synopsys' EDA applications cannot be used without appropriate license key files. Synopsys is the sole source of legitimate license keys, which it provides only to licensed users of its software.

13. Each customer needs a license key file to execute Synopsys tools. The license key file contains information that allows Synopsys' License Key System to determine whether the customer is authorized to execute specific Synopsys tools and applications. For example, a license key file contains the name of the customer, identifies the software the customer is licensed to use, and identifies the number of concurrent users permitted under the customer's license.

14. Synopsys' License Key System can detect potential software piracy and report related data back to Synopsys, such as the IP address or MAC address associated with the computer or computers associated with the suspected piratical activity. This data is commonly referred to as "Call-Home Data."

15. On information and belief, Sunlune is a privately held company that has its sole office in Santa Clara, California, and was founded in 2009. According to its website, Sunlune is a computing power chip design company focused on the development of high-throughput chips to

1  support cryptocurrency mining.  These types of products commonly require EDA and IP software
2  to design, verify, and simulate performance.

**Sunlune's Unauthorized Access To and Use of Synopsys Software**

4  16.  On February 17, 2023, Sunlune entered into an End-User Software License and Maintenance Agreement ("EULA") with Synopsys. The Synopsys EULA is an overarching agreement under which customers may obtain software licenses and services subject to additional terms and conditions stated in the license agreement and the terms of set forth in, for example, purchase orders that are commonly separately negotiated.  Pursuant to the EULA, customers like Sunlune may execute purchase agreements that specify the price, term, and other rights and obligations attendant to the customer's license to specific Synopsys EDA tools. Such licenses provide limited rights to copy, access, and use only the specific tools purchased and a specific number of allowable concurrent uses (sometimes referred to as "license seats").

17.  On April 4, 2023, Synopsys provided a price quotation to Sunlune for limited thirty-six months licenses to use Fusion Compiler, HSPICE, and PrimeLib; Sunlune entered into a limited license for each of these Synopsys software products on August 4, 2023.  Sunlune never requested or received a price quotation for any license for IC Compiler II.

18.  The licenses that Sunlune took permit access and use of limited copies of Fusion Compiler, HSPICE, and PrimeLib.  Beginning on or about July 2023 and continuing to at least January 8, 2024, however, Sunlune began using counterfeit license keys to circumvent the Synopsys License Key System in order to access and use more copies of Fusion Compiler, HSPICE, and PrimeLib than permitted under its licenses.

19.  In addition, Sunlune has also been using counterfeit license keys to circumvent the Synopsys License Key System in order to access and use IC Compiler II.

20.  Based on its investigation to date, Synopsys has identified over 11,000 instances of Sunlune operating counterfeit keys under 7 different usernames to access Synopsys' EDA software without authorization.

21.  The fact that Sunlune is using technological means to circumvent Synopsys' licensing system and to avoid paying Synopsys license fees for access and use of the software

indicates that Sunlune is aware that its access and use of Synopsys' software is unauthorized and unlawful.

### FIRST CLAIM FOR RELIEF

**Violations of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201, *et seq*.**

22. Synopsys hereby restates and re-alleges the allegations set forth above and incorporates them by reference.

23. Section 1201(a)(1) provides, in pertinent part, that no person shall circumvent a technological measure that effectively controls access to a work protected under this title.

24. Synopsys software is subject to protection under the copyright laws of the United States.

25. Access to Synopsys tools, including those used by Sunlune, is controlled by technological measures that effectively control access to Synopsys tools.

26. Sunlune has used technical means to circumvent Synopsys' License Key System to gain unauthorized access to Synopsys tools. Sunlune has, for example, used counterfeit license keys to circumvent Synopsys' access controls and to access without authorization at least Synopsys EDA tools IC Compiler II, Fusion Compiler, HSPICE, and PrimeLib.

27. The conduct described above has caused and continues to cause irreparable harm to Synopsys through at least the loss of control over its intellectual property. Piracy like Sunlune's also damages customer goodwill and confidence in Synopsys' technology and the value associated with it. Synopsys has also suffered monetary losses in an amount to be specifically computed at trial, but that amount is in the millions of dollars in lost revenue and constitutes a violation of 17 U.S.C. § 1201.

28. The conduct described above was willful and done with knowledge of wrongdoing; an award of injunctive relief and damages is therefore necessary to dissuade Sunlune and others from circumventing Synopsys' License Key System.

29. Accordingly, pursuant to 17 U.S.C. § 1203, Synopsys is entitled to and hereby demands statutory or actual damages in the maximum amount for each act of circumvention of Synopsys technological access controls.

30. Synopsys is further entitled to an award of attorneys' fees and costs as provided under 17 U.S.C. § 1203.

31. Sunlune's conduct, unless enjoined and restrained by the Court, will cause continued irreparable harm to Synopsys, which has no adequate remedy at law. Pursuant to 17 U.S.C. § 1203, Synopsys is entitled to a preliminary and permanent injunction prohibiting further violations of § 1201.

## SECOND CLAIM FOR RELIEF

### Breach of Contract

32. Synopsys hereby restates and re-alleges the allegations set forth above and incorporates them by reference.

33. In February 2023, Synopsys and Sunlune entered into a EULA. The EULA prohibits the copying or use of any Licensed Product in any manner not expressly allowed by the license rights stated in the EULA. The EULA further prohibits attempts to circumvent any license key. Moreover, the EULA conditions the right to use the Licensed Products on compliance with the terms and conditions of the EULA.

34. Synopsys has substantially complied with all conditions, covenants, and promises required to be performed under the EULA, and all conditions required for Sunlune's performance under the EULA have occurred.

35. Sunlune has materially breached the EULA by using counterfeit license keys to circumvent Synopsys' access controls and to access without authorization at least Synopsys EDA tools IC Compiler II, Fusion Compiler, HSPICE, and PrimeLib.

36. As a result of Sunlune's breach of the EULA, Synopsys has been harmed.

## PRAYER FOR RELIEF

WHEREFORE, Synopsys prays for judgment against Defendants as follows:

A. Entry of judgment in favor of Synopsys against Defendants;

B. An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, affiliated companies, assigns and successors in interest, and those persons in active concert or participation with them from circumventing Synopsys'

1   License Key System or other technological measures that control access to Synopsys' works in
2   violation of 17 U.S.C. §§ 1201, *et seq.*;
3          C.     An order awarding Synopsys statutory and/or actual damages for each instance on
4   which Defendants violated the DMCA by circumventing measures controlling access to Synopsys
5   software pursuant to 17 U.S.C. § 1203;
6          D.     An order awarding Synopsys general and specific damages;
7          E.     Prejudgment and post-judgment interest;
8          F.     An order awarding Synopsys its costs and attorneys' fees pursuant to 17 U.S.C.
9   § 1203;
10         G.     An order for an accounting of all gains, profits, cost savings, and advantages
11  realized by Defendants from their acts;
12         H.     All such further and additional relief, in law or equity, to which Synopsys may be
13  entitled or which the Court deems just and proper

## JURY DEMAND

Synopsys hereby demands a jury trial on all issues so triable as of right.

Dated: January 11, 2024                    ORRICK, HERRINGTON & SUTCLIFFE LLP


                                           By:    */s/ Denise M. Mingrone*
                                                  DENISE M. MINGRONE
                                                  Attorneys for Plaintiff
                                                  SYNOPSYS, INC.