UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SYNOPSYS, INC., <br><br>    Plaintiff, <br><br>v. <br><br>SUNLUNE CORPORATION, <br><br>    Defendant. | Case No. 24-cv-00220-BLF <br><br>**ORDER GRANTING PLAINTIFF SYNOPSYS, INC.'S MOTION FOR DEFAULT JUDGMENT** <br><br>[Re: ECF 43] |

Plaintiff Synopsys, Inc. ("Synopsys") brings this suit against Defendant Sunlune Corporation ("Sunlune") for violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201 *et seq.*, and breach of contract, alleging that Sunlune used counterfeit license keys to exceed its license to use certain Synopsys software. *See* Compl., ECF 1. The Court has issued both a temporary restraining order ("TRO") and a preliminary injunction against Sunlune. *See* TRO, ECF 17; Prelim. Inj., ECF 27.

Sunlune has not appeared in this suit through counsel, and instead has attempted to litigate *pro se* despite the Court's explicit advisement that a corporation may proceed in federal court only through a licensed attorney. *See* Order Striking Answer, ECF 34; Order Striking Opp., ECF 39. The Clerk has entered default against Sunlune. *See* Clerk's Notice, ECF 41.

Synopsys now moves for default judgment against Sunlune. *See* Pl.'s Mot. for Def. Jud., ECF 43. The Court finds the motion to be suitable for decision without oral argument, and the motion hearing set for January 16, 2025 is VACATED. The motion for default judgment is GRANTED.

## I. BACKGROUND[1]

Plaintiff Synopsys is a software company headquartered in Sunnyvale, California. *See* Compl. ¶ 8. It is the fourteenth largest software company in the world, and is a leading provider of electronic design automation ("EDA") software, which is used in the design, testing, and manufacture of microchips and electronic systems. *See id*. Synopsys has invested millions of dollars into the research, development, design, and refinement of its EDA software applications, which include IC Compiler II, Fusion Compiler, HSPICE, and PrimeLib. *See id.* ¶¶ 9-10.

Synopsys does not sell its ownership rights, copyrights, or other intellectual property rights to its EDA software. *See* Compl. ¶ 11. Instead, Synopsys licenses its EDA software, thereby granting its customers limited rights to install the software and to access specific software programs subject to control by Synopsys' License Key System. *See id.* Each customer must use a license key file to execute Synopsys' tools. *See id.* ¶ 13. The license key file contains the customer's name, identifies the software the customer is licensed to use, and identifies the number of concurrent users permitted under the customer's license. *See id.* The License Key System can detect potential software piracy. *See id.* ¶ 14.

Defendant Sunlune is a chip design company located in Santa Clara, California. *See* Compl. ¶ 15. In February 2023, Sunlune entered into an End-User Software License and Maintenance Agreement ("EULA") with Synopsys. *See id.* ¶ 16. The EULA is an overarching agreement under which a customers may enter into a license for specific Synopsys EDA tools. *See id.* In August 20203, Sunlune entered into a limited license to Synopsys' Fusion Compiler, HSPICE, and PrimeLib software products. *See id.* ¶ 17. However, Sunlune used counterfeit license keys to access more copies of the licensed products than was authorized, and to access a product not covered by the license, IC Compiler II. *See id.* ¶¶ 18-19. Sunlune has used counterfeit license keys at least 15,000 times to obtain unauthorized access Synopsys' EDA software. *See* Roffman Decl. ¶¶ 12-15, ECF 43-1.

---

[1] The Background section is drawn from the factual allegations of the complaint, which are accepted as true with the exception of allegations related to damages, and from the uncontroverted evidence submitted by Synopsys.

1  Synopsys filed this suit in January 2024, asserting two claims: (1) violation of the DMCA,
2  and (2) breach of contract. *See generally* Compl., ECF 1. Synopsys also filed an application for
3  TRO. *See* TRO Applic., ECF 10. Sunlune did not respond to the TRO application and did not
4  appear at the hearing set by the Court. The Court issued the requested TRO, prohibiting Sunlune
5  from accessing, using, transferring, or copying any Synopsys software without authorization from
6  Synopsys. *See* TRO, ECF 17. The Court also directed Sunlune to show cause why a preliminary
7  injunction should not issue. *See id.* Synopsys and Sunlune thereafter submitted a proposed
8  stipulated preliminary injunction, which was approved by the Court. *See* Prelim. Inj., ECF 27.

9  In March 2024, Sunlune filed a *pro se* answer to the complaint. *See* Answer, ECF 29. The
10 Court struck Sunlune's answer on the basis that a corporation may not proceed *pro se* in federal
11 court, and set a May 2024 deadline for Sunlune to make a proper appearance through counsel. *See*
12 Order Striking Answer, ECF 34. When Sunlune failed to appear through counsel by that deadline,
13 Synopsys filed a motion for a Clerk's entry of default. *See* Mot. for Entry of Default, ECF 37.
14 Sunlune filed a *pro se* response, which the Court struck, and the Clerk entered default against
15 Sunlune in June 2024. *See* Order Striking Opp., ECF 39; Clerk's Notice, ECF 41.

16 Synopsys now seeks entry of default judgment against Sunlune.

## II. LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action, who is neither a minor nor an incompetent person, and against whom a judgment for affirmative relief is sought. *See* Fed. R. Civ. P. 55(a). After entry of default, a court may, in its discretion, enter default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

In deciding whether to enter default judgment, a court should consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

3

In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those related to the amount of damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). When the damages claimed are not readily ascertainable from the pleadings and the record, the court may either conduct an evidentiary hearing or proceed on documentary evidence submitted by the plaintiff. *See Johnson v. Garlic Farm Truck Ctr. LLC*, 2021 WL 2457154, at *2 (N.D. Cal. Jun. 16, 2021).

### III. DISCUSSION

Although Synopsys' motion refers to both its DMCA claim (Claim 1) and its contract claim (Claim 2), the motion makes clear that Synopsys requests relief only under the DMCA. *See* Pl.'s Mot. for Def. Jud. at 11. Specifically, Synopsys states that any contract damages such as lost revenues "are subsumed within the significant statutory damages award requested on Synopsys' DMCA claims." *Id*. Synopsys also seeks permanent injunctive relief under the DMCA. *See id.* at 14. Because Synopsys seeks relief only under the DMCA, the Court limits its evaluation of Synopsys' motion for default judgment to Claim 1 under the DMCA. The Court dismisses Claim 2 for breach of contract without prejudice.

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court discusses in turn subject matter jurisdiction, personal jurisdiction, service of process, the *Eitel* factors, and the requested relief.

#### A. Subject Matter Jurisdiction

The Court has federal question jurisdiction over Claim 1 for violation of the DMCA because that claim is brought under a federal statute. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

#### B. Personal Jurisdiction

The Court also has personal jurisdiction over Sunlune. A corporation is subject to general personal jurisdiction in its state of incorporation and in the state where it maintains its principal

4

place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Sunlune maintains its principal place of business in Santa Clara, California. *See* Compl. ¶ 15.

### C. Service of Process

When a plaintiff requests default judgment, the court must assess whether the defendant was properly served with notice of the action. *See Solis v. Cardiografix*, No. 12-cv-01485, 2012 WL 3638548, at *2 (N.D. Cal. Aug. 22, 2012). Synopsys personally served the summons and complaint on Sunlune's agent for service of process, Fuquan Wang, on January 22, 2024. *See* POS, ECF 13.

### D. *Eitel* Factors

Next, the Court considers whether default judgment is warranted under the *Eitel* factors.

#### 1. Factor 1 – Possibility of Prejudice

Under the first *Eitel* factor, the Court finds that Synopsys would be prejudiced without a default judgment against Sunlune. Because Sunlune did not respond to the complaint, Synopsys' only recourse is default judgment. *See Ridola v. Chao*, No. 16-CV-02246-BLF, 2018 WL 2287668, at *5 (N.D. Cal. May 18, 2018) (plaintiff prejudiced without default judgment because she "would have no other means of recourse against Defendants for the damages caused by their conduct"); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010) ("Here, denial of Plaintiff's request for judgment and injunctive relief would leave Plaintiff with no means to prevent further infringement by Defendants, and leave Plaintiff prone to continued circumvention of its security measures by Defendants.").

The first factor weighs in favor of granting default judgment.

#### 2. Factors 2 and 3 – Merits and Sufficiency of Claim

The second and third *Eitel* factors address the merits and sufficiency of the plaintiff's claims. Courts often analyze these two factors together. *See Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) ("Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together."). "[T]he general rule is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

Synopsys' DMCA claim is brought under 17 U.S.C. § 1201(a)(1), which provides in relevant part that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a)(1)(A). The Ninth Circuit discussed this provision at length in *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928 (9th Cir. 2010). Departing from Federal Circuit decisions holding that a § 1201(a) plaintiff must show the act of circumvention infringes or facilitates infringement of the plaintiff's copyright, the *MDY* court construed § 1201(a) to create "a new anticircumvention right distinct from copyright infringement[.]" *MDY*, 629 F.3d at 948. Under the Ninth Circuit's construction, a copyright owner may seek redress for another's circumvention of technological measures that control access to a protected work regardless of whether the owner's copyright is infringed. *See id.* at 950. The *MDY* court opined that § 1201(a) provides an important enforcement tool that copyright owners may use to ensure they receive compensation for valuable non-infringing access to their works, for example, where copyright owners "make movies or music available online, protected by an access control measure, in exchange for direct or indirect payment." *Id*.

Consistent with the guidance provided by *MDY*, district courts in the Ninth Circuit have identified the elements of a DMCA claim under § 1201(a)(1)(A) as follows: "(i) the work at issue was protected under the Copyright Act, (ii) the copyrighted work was protected by a 'technological measure,' and (iii) the technological measure was 'circumvented' in order to obtain access to the copyrighted work." *iSpot.tv, Inc. v. Teyfukova*, No.: 2:21-cv-06815-MEMF(MARx), 2023 WL 3602806, at *4 (C.D. Cal. May 22, 2023) (*citing MDY*, 629 F.3d at 944); *see also Synopsys, Inc. v. Libr. Techs., Inc.*, No. 20-CV-07014-CRB, 2022 WL 783898, at *2 (N.D. Cal. Mar. 15, 2022) (reciting same elements). The DMCA defines the phrase "to circumvent a technological measure" to mean, among other things, "to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner[.]" 17 U.S.C. § 1201(a)(3)(A).

Synopsys' factual allegations in its complaint, which are accepted as true, satisfy these elements. Synopsys alleges that: its software is protected under the copyright laws of the United States (first element), *see* Compl. ¶ 24; access to its copyrighted software is controlled by

6

technological measures, including Synopsys' License Key System (second element), *see id*. ¶¶ 25-26; and Sunlune used counterfeit license keys to circumvent Synopsys' License Key System in order to obtain unauthorized access to Synopsys' IC Compiler II, Fusion Compiler, HSPICE, and PrimeLib products (third element), *see id*. ¶ 26. The complaint alleges that "Synopsys has identified over 11,000 instances of Sunlune operating counterfeit keys under 7 different usernames to access Synopsys' EDA software without authorization." *Id*. ¶ 20.

While Synopsys' factual allegations alone are sufficient to demonstrate the merits and sufficiency of its DMCA claim, Synopsys bolsters those allegations with the declaration of Dan Roffman, an expert in forensic technology investigations. *See* Roffman Decl., ECF 43-1. Mr. Roffman states that Synopsys "goes to great lengths" to protect its products through use of licensing software, and he describes the mechanism by which Synopsys' licensing software detects piracy and alerts Synopsys. *See id.* ¶¶ 7-9. Sunlune nonetheless was able to circumvent Synopsys' protections through use of multiple counterfeit license keys via multiple servers and devices. *See id.* ¶¶ 10-15. Mr. Rothman notes that the data provided by Synopsys indicates more than 11,000 instances of circumvention by Sunlune. *See id.* ¶ 10. Following forensic imaging, however, Mr. Rothman detected more than 15,000 circumventions of Synopsys' protections by Sunlune. *See id*. ¶ 15. Mr. Roffman opines that Sunlune attempted to conceal its circumvention of Synopsys' protections, and its unauthorized access to Synopsys' products, by spoliating evidence. *See id.* ¶¶ 16-17.

The Court finds that Synopsys has established the merits and sufficiency of its DMCA claim and thus that the second and third *Eitel* factors weigh in favor of granting default judgment.

### 3. Factor 4 – Sum of Money at Stake

Under the fourth *Eitel* factor, the Court must consider the amount of money at stake in relation to the seriousness of the Defendants' conduct. "Default judgment is disfavored when a large amount of money is involved or unreasonable in light of the potential loss caused by the defendant's actions." *Operating Engineers' Health & Welfare Tr. Fund for N. California v. Hansen*, No. 19-CV-08344-JSC, 2024 WL 3558851, at *4 (N.D. Cal. July 26, 2024) (internal quotation marks and citation omitted). However, "when the sum is tailored to the specific

7

misconduct of the defendant, default judgment may be appropriate." *Id*. (internal quotation marks and citation omitted).

Synopsys seeks statutory damages under the DMCA, which provides in relevant part that "[a]t any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1201 in the sum of not less than $200 or more than $2,500 per act of circumvention . . . as the court considers just." 17 U.S.C. § 1203(c)(3)(A). Although Mr. Roffman's declaration establishes more than 15,000 acts of circumvention by Sunlune, Synopsys limits its request for statutory damages to the 11,000 acts of circumvention alleged in the complaint so as not to run afoul of Federal Rule of Civil Procedure 54(c), which provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *See* Pl.'s Mot. for Def. Jud. at 10. Synopsys does seek maximum statutory damages of $2,500 per act of circumvention, and thus requests a total damages award of $27,500,000 ($2,500 per violation multiplied by 11,000 violations).

Synopsys acknowledges that the requested award is quite large, but it argues that maximum statutory damages are warranted in light of Sunlune's willful misconduct. Other courts in this district have awarded maximum statutory damages of $2,500 per act under § 1203(c)(3)(A) where the defendant's conduct was willful, finding such an award to be "both consistent with Congressional intent and necessary to discourage wrongful conduct by other potential [violators]." *Sony Computer Ent. Am., Inc. v. Filipiak*, 406 F. Supp. 2d 1068, 1075 (N.D. Cal. 2005). In the present case, Sunlune's willful misconduct is established by its use of multiple counterfeit license keys, via multiple servers and devices, over a substantial period of time. Moreover, Mr. Roffman opines that the vast majority of Sunlune's acts of circumvention occurred in August 2023, the same month Sunlune entered into a limited license to Synopsys' Fusion Compiler, HSPICE, and PrimeLib software products. *See* Roffman Decl. ¶ 10; Compl. ¶ 17. Based on that timing, it appears that Sunlune intended to obtain unauthorized access to Synopsys' products when it entered into the limited license. Sunlune's acts of circumvention continued through April 2024, well after this lawsuit was filed in January 2024. *See* Roffman Decl. ¶ 13. Finally, Sunlune attempted to conceal its misconduct by spoliating evidence after commencement of this litigation,

8

in violation of its discovery obligations.  *See* Roffman Decl. ¶¶ 16-17.

The Court cannot conceive of a more egregious violation of the DMCA's anticircumvention provision, and on that basis concludes that an award of the maximum statutory damages authorized by Congress for such violations is appropriate here.  The Court's conclusion is based on the particular facts of this case, as established by Synopsys' uncontroverted factual allegations and evidence, which demonstrate Sunlune's willful violation of the DMCA over an extended period of time, violation of its discovery obligations, and spoliation of evidence.  Accordingly, the fourth Eitel factor weighs in favor of granting default judgment despite the large amount of damages sought by Synopsys.

### 4. Factors 5 and 6 – Possibility of Factual Dispute or Excusable Neglect

Under the fifth and sixth *Eitel* factors, the Court considers whether there is the possibility of a dispute over any material fact and whether the default was due to excusable neglect.  *See Ridola*, 2018 WL 2287668, at *13.  Sunlune stipulated to entry of the preliminary injunction and filed an answer to the complaint.  Although the answer subsequently was stricken, Sunlune clearly was aware of this action and could have made a proper appearance through counsel to raise any factual dispute that might exist.  Sunlune did not do so.  There is no indication that Sunlune's failure to appear through counsel was due to excusable neglect.  To the contrary, the Court expressly advised Sunlune that it may litigate this action only through licensed counsel, and granted Sunlune an opportunity to obtain counsel before default was entered.  On this record, the Court finds that there is no possibility that Sunlune could dispute any material fact or establish that default was caused by excusable neglect.

The fifth and sixth *Eitel* factors weigh in favor of granting default judgment.

### 5. Factor 7 – Policy Favoring Decision on the Merits

The seventh *Eitel* factor, which is the policy favoring decisions on the merits, weighs against default judgment.  In cases where the other factors weigh in favor of default judgment, the seventh factor will not be an impediment to granting default judgment.  *See Ridola*, 2018 WL 2287668, at *13 ("Although federal policy favors decision on the merits, Rule 55(b)(2) permits entry of default judgment in situations, such as this, where a defendant refuses to litigate.").

### 6. Conclusion

The Court finds that the first through sixth *Eitel* factors strongly favor granting default judgment, and that those factors outweigh the seventh *Eitel* factor. Accordingly, Synopsys' motion for default judgment is GRANTED on Claim 1 brought under the DMCA.

### E. Relief Requested

Synopsys requests statutory damages under the DMCA in the amount of $27,500,000, as discussed above, and entry of a permanent injunction. The Court finds that the requested statutory damages are warranted for the reasons discussed above. In particular, the Court finds that Sunlune's egregious misconduct – willful violation of the DMCA in complete disregard of Synopsys' rights, violation of its discovery obligations, and attempt to conceal its actions – justifies an award of the maximum statutory damages available.

With respect to the request for a permanent injunction, such relief is expressly authorized by the DMCA. *See* 17 U.S.C. § 1203(b)(1) (authorizing district court to "grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation"). The Court previously granted a TRO and a preliminary injunction to prohibit Sunlune's continued unauthorized access to Synopsys' products. The factual determinations underlying those rulings are only strengthened by the additional evidence presented in the current motion for default judgment. Courts may impose permanent injunctions when granting default judgment DMCA cases. *See, e.g., Craigslist,* 694 F. Supp. 2d at 1062 (granting default judgment that included permanent injunctive relief in DMCA case). Accordingly, the Court finds that a permanent injunction is appropriate in this case.

"Generally, an injunction must be narrowly tailored to remedy only the specific harms shown by a plaintiff, rather than to enjoin all possible breaches of the law." *Craigslist*, 694 F. Supp. 2d at 1062. The injunction requested by Synopsys is limited to a prohibition on Sunlune's unauthorized access of Synopsys' products and is consistent with the language of the preliminary injunction previously issued in this case.

The Court finds that Synopsys has established its entitlement to both the statutory damages and the permanent injunctive relief requested in its motion.

## IV. ORDER

(1) Plaintiff Synopsys, Inc.'s motion for default judgment is GRANTED.

(2) A separate Default Judgment will be entered for Plaintiff Synopsys, Inc. and against Defendant Sunlune Corporation on Claim 1 for violation of the DMCA, awarding statutory damages in the amount of $27,500,000 and imposing a permanent injunction.

(3) Claim 2 for breach of contract is DIMISSED WITHOUT PREJUDICE.

(4) This order terminates ECF 43.

Dated: November 15, 2024

_____
BETH LABSON FREEMAN
United States District Judge