1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

8

SYNOPSYS, INC.,

Plaintiff,

v.

SUNLUNE CORPORATION,

Defendant.

Case No.  24-cv-00220-BLF

**ORDER DENYING MOTION TO VACATE DEFAULT JUDGMENT**

[Re:  ECF 55]

16        On November 15, 2024, the Court granted default judgment for Plaintiff Synopsys, Inc.

("Synopsys") and against Defendant Sunlune Corporation ("Sunlune") on Synopsys' claim that

Sunlune violated the anti-circumvention provision of the Digital Millennium Copyright Act

("DMCA") more than 11,000 times.  *See* Order Granting Pl.'s Mot. for Default Judgment

("Default Judgment Order"), ECF 45.  The default judgment includes an award of $27,5000,000 in

statutory damages under the DMCA and a permanent injunction prohibiting Sunlune from

accessing or using Synopsys' software without authorization.  *See* Default Judgment and

Permanent Injunction, ECF 46.

24        Before the Court is Sunlune's motion to vacate the default judgment, which has been fully

briefed.  *See* Def.'s Mot. to Vacate, ECF 55; Pl.'s Opp., ECF 56; Def.'s Reply, ECF 57.  The

Court heard oral argument on May 8, 2025.  *See* Minute Entry, ECF 63.

27        Sunlune's motion to vacate the default judgment is DENIED for the reasons discussed

below.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

## I.    BACKGROUND

*Complaint Filed in January 2024*

Synopsys filed this action on January 11, 2024, alleging the following facts:  Synopsys, a software company headquartered in Sunnyvale, California, is a leading provider of electronic design automation ("EDA") software used in the design, testing, and manufacture of microchips and electronic systems.  *See* Compl. ¶ 8, ECF 1.  Synopsys does not sell its EDA software, but instead issues licenses granting its customers limited rights to install the software and to access specific software programs subject to control by Synopsys' License Key System.  *See id*. ¶ 11. The License Key System can detect potential software piracy.  *See id*. ¶ 14.

Sunlune is a chip design company headquartered in Santa Clara, California.  *See* Compl. ¶ 15.  In 2023, Sunlune entered into a limited license to Synopsys' Fusion Compiler, HSPICE, and PrimeLib software products.  *See id.* ¶ 17.  Sunlune used counterfeit license keys to access more copies of the licensed products than was authorized, and to access a product not covered by the license, IC Compiler II.  *See id.* ¶¶ 18-19.  Synopsys' investigation identified more than 11,000 instances of Sunlune operating counterfeit keys to obtain unauthorized access to Synopsys' EDA software.  *See id*. ¶ 20.

Based on these allegations, Synopsys filed the present lawsuit, asserting claims against Sunlune for violation of the DMCA and breach of contract.  *See* Compl. ¶¶ 22-36.

*TRO Issued in January 2024 and Preliminary Injunction Issued in February 2024*

On January 25, 2024, the Court granted Synopsys' application for a temporary restraining order ("TRO") prohibiting Sunlune from accessing, using, transferring, or copying any Synopsys software without authorization from Synopsys.  *See* TRO, ECF 17.  On February 21, 2024, the Court issued a preliminary injunction.  *See* Prelim. Inj., ECF 27.

*Sunlune's Pro Se Answer Stricken in April 2024*

On March 11, 2024, Sunlune filed a *pro se* answer to the complaint signed by its Director and CEO, Fuquan Wang.  *See* Answer, ECF 29.  Synopsys moved to strike the answer on the basis that a corporation may not proceed *pro se* in federal court.  *See* Pl.'s Mot. to Strike, ECF 31. Sunlune did not file opposition to that motion.  The Court issued an order on April 23, 2024,

granting the motion to strike the answer ("Order Striking Answer") and advising Sunlune that it may appear in this action only through a licensed attorney. *See* Order Striking Answer, ECF 34. Specifically, the Court stated in the order that:

> The answer was filed by Defendant acting *pro se*. However, a corporate defendant cannot proceed before the Court *pro se* – a corporation may proceed only through a licensed attorney. *See In re Bigelow*, 179 F.3d 1164, 1165 (9th Cir. 1999) ("The law is clear that a corporation can be represented only by a licensed attorney.").

*Id*. The Court granted Sunlune thirty days, until May 23, 2024, to appear through counsel, noting that if Sunlune failed to do so, Synopsys could seek entry of default and default judgment. *See id.*

### Sunlune's Defiance of Court's Order and Clerk's Entry of Default in June 2024

Sunlune did not appear through counsel within the thirty-day period granted by the Court, and Synopsys filed a motion for a Clerk's entry of default. *See* Pl.'s Mot. for Clerk's Entry of Default, ECF 37.

Sunlune filed a *pro se* response signed by its Director and CEO, Mr. Wang, in defiance of the Court's Order Striking Answer. *See* Def.'s Response, ECF 38. Sunlune's response made clear that its violation of the Court's order was intentional, as Sunlune acknowledged "the court's requirement for the company to hire a lawyer," but indicated that Sunlune was disregarding the Court's order based on its own view that "it is not necessary for Sunlune to hire a lawyer" because "no one understands the facts related to the case better than the company itself." *Id*. at 1-2.

On June 3, 2024, the Court issued an order striking Sunlune's response to Synopsys' motion for a Clerk's entry of default. *See* Order Striking Def.'s Opp., ECF 39. The Court reiterated that a corporate defendant cannot appear in federal district court *pro se*, and may appear only through a licensed attorney. *See id.*

The Clerk entered default against Sunlune on June 6, 2024. *See* Clerk's Notice, ECF 41.

### Default Judgment Against Sunlune in November 2024

Several months elapsed, during which Sunlune made no effort to appear through counsel or set aside the Clerk's entry of default. On October 1, 2024, Synopsys moved for default judgment on its DMCA claim. *See* Pl.'s Mot. for Default Judgment, ECF 43. Synopsys presented evidence establishing more than 15,000 acts of circumvention of its License Key System by

Sunlune, but limited its request for statutory damages to the 11,000 acts of circumvention alleged in the complaint. *See id.* Synopsys requested maximum statutory damages of $2,500 per each act of circumvention for a total of $27,500,000. *See id.* Synopsys served its motion for default judgment on Sunlune. *See* POS, ECF 44. Sunlune still took no action.

On November 15, 2024, the Court granted Synopsys' unopposed motion for default judgment on its DMCA claim and dismissed Synopsys' contract claim without prejudice. *See* Default Judgment Order at 11. The Court found that maximum statutory damages were warranted based on Synopsys' evidence that Sunlune willfully violated the DMCA, including evidence that: Sunlune used multiple counterfeit license keys, via multiple servers and devices, over a substantial period of time; Sunlune's acts of circumvention continued well after this lawsuit was filed; and Sunlune attempted to conceal its misconduct by spoliating evidence after commencement of this litigation, in violation of its discovery obligations. *See id.* at 8-9. Stating that it could not "conceive of a more egregious violation" of the anti-circumvention provision of the DMCA, the Court awarded maximum statutory damages in the amount of $27,500,000, and entered a permanent injunction against Sunlune as permitted under the DMCA. *See id.* at 9-10.

*Issuance of Writ of Execution in January 2025 and Sunlune's Filing of Present Motion*

Sunlune's inaction continued for two more months, until the Clerk's January 17, 2025 issuance of a Writ of Execution (Money Judgment) against Sunlune in the amount of $27,700,395.78. *See* Writ of Execution, ECF 54. Six days later, Sunlune finally appeared through counsel when it filed the present motion to vacate the default judgment. *See* Def.'s Mot. to Vacate.

## II.    LEGAL STANDARD

"The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Courts in the Ninth Circuit use the same three-factor test to determine whether to set aside an entry of default or a default judgment, although the test is more liberally applied when a default judgment has not yet been entered because "there is no interest in the finality of the judgment with which to contend." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 & n.1 (9th Cir. 2010); *see*

*also Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 925 (9th Cir. 2004) ("The 'good cause' standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b).").

The three factors governing relief from entry of default or default judgment are: "(1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party." *Mesle*, 615 F.3d at 1091 (internal quotation marks, citation, and brackets omitted). This standard "is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside" the default judgment. *Id*. The party seeking to vacate a default judgment bears the burden of showing that these factors favor relief. *See Franchise Holding II*, 375 F.3d at 926.

## III.    DISCUSSION

Sunlune argues that relief from the default judgment is warranted under the applicable three-factor test, asserting that it did not engage in culpable conduct, it has a meritorious defense to Synopsys' DMCA claim, and reopening the default judgment would not prejudice Synopsys. In opposition, Synopsys argues that Sunlune has failed to meet its burden to show entitlement to relief, because the record clearly establishes culpable conduct on the part of Sunlune, Sunlune cannot show a meritorious defense to the DMCA claim, and reopening the default judgment would prejudice Synopsys. The Court addresses each of the three relevant factors in turn.

### A.    Culpable Conduct

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *Mesle*, 615 F.3d at 1092 (internal quotation marks and citation omitted, italics in original). "[I]n this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer[.]" *Id*. The choice not to answer must have been clearly motivated by an improper purpose, such that "there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id*. (internal quotation marks and citation omitted).

In *Mesle*, the Ninth Circuit held that the district court erred in finding culpability on the

United States District Court
Northern District of California

part of an unsophisticated, unrepresented individual (Mesle) based solely on his failure to act after receiving documents advising of judicial forfeiture proceedings and the steps necessary to avoid default. *See Mesle*, 615 F.3d at 1093-94. "[T]he facts demonstrate that Mesle was ignorant of the law and unable to understand correctly his legal obligations by reading and synthesizing the information on two sets of documents received months apart – not an unusual occurrence in the case of a layman acting without the help of a lawyer." *Id.* at 1093. Under those circumstances, the Ninth Circuit held that the record was insufficient to "suggest[] the bad faith necessary to find that he intentionally failed to answer the notice he had received regarding the action." *Id*.

The *Mesle* court distinguished *Franchise Holding II*, in which a corporation was found to have engaged in culpable conduct based on its failure to respond to a suit of which it had notice. *See Mesle*, 615 F.3d at 1093 (discussing *Franchise Holding II*, 375 F.3d at 926). The *Mesle* court indicated that "[w]hen considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions may be assumed, and with it, intentionality." *Id*. Without determining whether the *Franchise Holding II* standard may be applied beyond cases involving sophisticated parties represented by counsel, the *Mesle* court concluded that in any event the standard would not apply to an unrepresented non-lawyer like Mesle. *See id.*

Sunlune asks to be treated like the unsophisticated, unrepresented individual in *Mesle* rather than the corporation in *Franchise Holding II*, asserting that it "did not understand the consequences of failing to appear in this case through a licensed attorney," and that it had a "misunderstanding or failure to comprehend the requirements of participating in an action as a company[.]" Def.'s Mot. to Vacate at 7. As established by the declaration of Sunlune's CEO, Sunlune is a chip design company located in Santa Clara, California, which paid Synopsys more than $2,500,000 in licensing fees for Synopsys' EDA software. *See* Wang Decl. ¶¶ 1, 4-7, ECF 55-1. Sunlune has in-house counsel, Tianmin Feng. *See* Feng Decl. ¶ 1, ECF 55-2. For unknown reasons, Sunlune's in-house counsel is not licensed to practice in the United States. *See* Wang Decl. ¶ 21; Feng Decl. ¶ 4. However, it borders on the frivolous to ask this Court to believe that the CEO and the in-house counsel of a Silicon Valley-based technology company did not understand the consequences of failing to properly file an answer in the present lawsuit through a

1    licensed attorney.

2          Even if the Court were to accept that Sunlune's CEO did not initially understand the

3    company's legal obligations, any such misunderstanding could not have survived the Court's April

4    23, 2024 order striking Sunlune's *pro se* answer, advising Sunlune that it may appear in this action

5    only through a licensed attorney, and granting Sunlune thirty days to obtain counsel. *See* Order

6    Striking Answer. That order was a single page in length, and the substantive text spanned only

7    thirteen lines. *See id.* As the Court observed at the hearing on Sunlune's motion to vacate the

8    default judgment, the Court could not have written a simpler order. *See* Hrg. Tr. 4:9-10, ECF 65.

9    Mr. Wang clearly understood the order, as evidenced by his subsequent *pro se* filing on behalf of

10   Sunlune in response to Synopsys' motion for a Clerk's entry of default. *See* Def.'s Response.

11   That filing acknowledged "the court's requirement for the company to hire a lawyer," but

12   indicated that Sunlune was continuing to appear *pro se* based on its own view that "it is not

13   necessary for Sunlune to hire a lawyer" because "no one understands the facts related to the case

14   better than the company itself." *Id*. at 1-2.

15         The Court highlighted the absurdity of Sunlune's position at the hearing on the present

16   motion to vacate the default judgment, noting that: "A FIFTH GRADER WOULD KNOW I'M

17   NOT A LAWYER, THE JUDGE TOLD ME I NEED A LAWYER, I BETTER DO

18   SOMETHING AS OPPOSED TO SAYING TO THE JUDGE, I KNOW MY CASE BETTER

19   THAN ANY LAWYER WOULD EVER KNOW IT, SO I AM ABLE TO REPRESENT THE

20   COMPANY." Hrg. Tr. 4:20-23. The Court struck Sunlune's *pro se* response to Synopsys' motion

21   for a Clerk's entry of default on June 3, 2024. *See* Order Striking Def.'s Opp.

22         Sunlune nonetheless failed to appear through counsel until it filed the present motion in

23   January 2025, eight months after the Court struck its answer, seven months after the Clerk entered

24   default, and two months after the Court entered default judgment. On this record, the Court finds

25   that there is no explanation of Sunlune's default that is inconsistent with a deliberate, willful, or

26   bad faith failure to respond. *See Mesle*, 615 F.3d at 1092. Accordingly, the Court finds that

27   Sunlune engaged in culpable conduct. That finding alone is sufficient to preclude the requested

28   relief from the default judgment. *See Mesle*, 615 F.3d at 1091 (movant's failure to carry its burden

1    on any one factor is sufficient reason for district court to refuse to set aside default judgment).

2    **B.    Meritorious Defense**

3    "A defendant seeking to vacate a default judgment must present specific facts that would

4    constitute a defense." *Mesle*, 615 F.3d at 1094 (internal quotation marks and citation omitted).

5    This burden "is not extraordinarily heavy," and has been described by the Ninth Circuit as

6    "minimal" in nature. *Id*. (internal quotation marks and citation omitted).  The defendant need only

7    "allege sufficient facts that, if true, would constitute a defense[.]" *Id*.

8    Sunlune asserts that it did not engage in the misconduct alleged by Synopsys.  Specifically,

9    Sunlune's CEO, Mr. Wang, states in his declaration that:  "Sunlune purchased sufficient licenses

10   for all its uses of Synopsys EDA software and therefore had no incentive or reason to use

11   counterfeit license keys," Wang Decl. ¶ 8; Sunlune in fact did not alter any Synopsys license keys

12   or create counterfeit Synopsys license keys, *id*. ¶¶ 11-12; "use any technical means to circumvent

13   Synopsys' License Key System to gain unauthorized access to Synopsys EDA software, *id*. ¶ 15;

14   and Sunlune has substantially complied with all conditions of the licensing agreements it entered

15   with Synopsys, *id* ¶¶ 18-19.  Sunlune asserts as a separate defense that Synopsys has not suffered

16   any damages from Sunlune's use of Synopsys' software, because Synopsys has been compensated

17   for each use of its EDA software by Sunlune.  *See* Wang Decl. ¶ 10.

18   Sunlune's assertions, if proved, would constitute a meritorious defense to Synopsys' claim

19   that Sunlune violated the DMCA's anti-circumvention provision.  Synopsys argues that Mr.

20   Wang's declaration statements are conclusory and inadmissible, and therefore are insufficient to

21   overcome the record evidence of Sunlune's misconduct.  The Court agrees that on the present

22   record, it appears unlikely that Sunlune could prove it did not engage in the alleged violations of

23   the DMCA.  However, Sunlune need not prove its defense at this time.  Whether the defense is

24   true "is not to be determined by the court when it decides the motion to set aside the default."

25   *Mesle*, 615 F.3d at 1094.  "Rather, that question would be the subject of the later litigation."  *Id*.

26   (internal quotation marks and citation omitted).

27   The Court finds Sunlune's assertion that it did not circumvent Synopsys' License Key

28   System to be sufficient to meet Sunlune's minimal burden to allege a meritorious defense.

United States District Court
Northern District of California

**C.    Prejudice**

The Court must consider whether granting Sunlune's motion for relief would prejudice Synopsys.  "An order setting aside a default judgment prejudices the plaintiff when the order would hinder the plaintiff's ability to pursue his claim." *Francois & Co., LLC v. Nadeau*, 334 F.R.D. 588, 599 (C.D. Cal. 2020).  "No prejudice exists, however, where setting aside default merely delays resolution of the case." *Id*.  "Likewise, plaintiffs do not suffer prejudice by being compelled to litigate their claims on the merits." *Id*.; *see also Viewsonic Corp. v. Electrograph Sys., Inc.*, No. CV 09–04093 SJO (JCx), 2009 WL 10672513, at *3 (C.D. Cal. Sept. 30, 2009) ("[N]o prejudice exists where setting aside default would merely delay resolution of the case, force the plaintiff to litigate its claims on the merits, or result in litigation costs.").

Sunlune argues that granting relief from the default judgment would not prejudice Synopsys, because Synopsys' expert already has conducted forensic imaging of Sunlune's computers and preserved any evidence necessary to pursue Synopsys' DMCA claim.  As Synopsys points out in opposition to the motion to vacate, Sunlune's argument simply ignores the substantial and undisputed record evidence that Sunlune spoliated evidence immediately after the Court granted the TRO and before Synopsys could examine Sunlune's computers.  Synopsys contends that it would be prejudiced in its ability to litigate this case if the Court were to set aside the default judgment and require Synopsys to go forward without the evidence spoliated by Sunlune.

Synopsys directs the Court to the declaration its forensic expert, Daniel Roffman, submitted in support of Synopsys' motion for default judgment.  *See* Roffman Decl., ECF 43-1. Mr. Roffman states that scripts were run on seven Sunlune servers that caused hourly deletions of the "bash history." *Id*. ¶ 16.  The bash history is a common location that Mr. Roffman examines during software piracy investigations, because it may contain evidence of executing or accessing pirated software.  *See id.*  Mr. Roffman determined that the scripts causing deletions of the bash history were created on January 26, 2024, the day after the Court issued the TRO and also granted Synopsys' request for expedited discovery, and four days before Mr. Roffman's company arrived to image Sunlune's servers.  *See id.*  Mr. Roffman nonetheless was able to find evidence of

9

counterfeit license keys and usage of Synopsys tools on Sunlune's servers. *See id.* ¶ 17.  Mr. Roffman was unable to analyze historical commands that may have shed additional light on Sunlune's usage of Synopsys' software, however, because that history had been deleted. *See id.* ¶ 16.

Synopsys' evidence that Sunlune spoliated evidence is unrefuted.  The spoliated evidence would have been highly relevant and probative of Synopsys' DMCA claim, particularly given Sunlune's assertion that it did not counterfeit license keys or engage in other alleged misconduct. The Court finds that Synopsys would be substantially prejudiced if it were required to litigate its DMCA claim on the merits more than a year after the spoliation occurred and without knowing exactly what evidence was deleted from Sunlune's servers.

### D.    Conclusion After Weighing Factors

The Court finds that Sunlune engaged in culpable conduct that led to the entry of the default judgment (first factor) and that Synopsys would be prejudiced if the default judgment were set aside and Synopsys were required to litigate the case on the merits without access to evidence that was spoliated by Sunlune more than a year ago (third factor).  Consequently, even accepting for purposes of analysis that Sunlune has alleged a meritorious defense (second factor), the Court finds that Sunlune has not carried its burden to show that relief from the default judgment is warranted under the applicable three-factor test.

"[J]udgment by default is a drastic step appropriate only in extreme circumstances," and "a case should, whenever possible, be decided on the merits."  *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).  However, on this record and for the reasons discussed above, the Court finds that this is one of the rare cases in which the defendant's egregious conduct warrants entry of default judgment and denial of relief therefrom.

### IV.    ORDER

(1)    Defendant Sunlune's motion to vacate the default judgment is DENIED.

(2)    This order terminates ECF 55.

Dated:  May 21, 2025

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

10